Arturo M. Cisneros, #120494 (arturo@mclaw.org)
Christina O, #266845, (christinao@mclaw.org)
Brian Thomley, #275132, (bthomley@mclaw.org)
MALCOLM ♦ CISNEROS, A Law Corporation
2112 Business Center Drive, Second Floor
Irvine, California 92612
949.252.9400 (Telephone)
949.252.1032 (Facsimile)

Proposed Attorneys for Steven M. Speier,
Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## RIVERSIDE DIVISION

| | |
|---|---|
| In re<br><br>KEVAN A. GREEN and DINA J. GREEN,<br><br>Debtors. | Bankruptcy Case No. 6:16-bk-10251 SY<br><br>Chapter 7<br><br>CHAPTER 7 TRUSTEE'S APPLICATION TO EMPLOY REAL ESTATE AGENT; DECLARATION OF BONNIE KIPPERMAN IN SUPPORT THEREOF<br><br>**[10899 Breckenridge Drive, San Diego, California 92131]**<br><br>[No Hearing Required Pursuant to Local Bankruptcy Rules 2014-1(b)(2) and 9013-1(o)] |

**TO THE HONORABLE SCOTT H. YUN, UNITED STATES BANKRUPTCY COURT JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; AND ALL INTERESTED PARTIES:**

The Application of the Chapter 7 Trustee, Steven M. Speier ("Trustee" or "Applicant"), respectfully represents that:

1. Applicant is the duly qualified and acting Chapter 7 Trustee in the above-entitled and numbered case.

2. The instant bankruptcy proceeding of Kevan A. Green and Dina J. Green ("Debtors") commenced on January 12, 2016, with the filing of a Voluntary Petition ("Petition") under Chapter 11 of the Bankruptcy Code, which was assigned case number 6:16-bk-10251 SY. Pursuant to Court Order

entered December 21, 2016, the case was converted to Chapter 7, and thereafter, Applicant was appointed interim Trustee for the Bankruptcy Estate ("Estate").

3.  According to the Debtors' bankruptcy petition and schedules, the Debtors' assets include real property located at 10899 Breckenridge Drive, San Diego, California 92131 ("Property"), wherein they stated a market value of $1,200,000.

4.  Based upon his independent valuation, consultation with a real estate professional, and equity analysis, the Trustee believes that there exists equity in the Property which would benefit the creditors of the Estate.

5.  Pursuant to 11 U.S.C. § 363, the Applicant is authorized to sell the Property.

6.  Bonnie Kipperman ("Agent") of LEONARD M. SMITH, A CA CORP ("Broker") is prepared to undertake a specific marketing program to sell the Property. Therefore, the Applicant intends to enter into a Residential Listing Agreement and Additional Listing Terms (collectively referred to as "Listing Agreement") with Agent, a copy of which is attached to the accompanying declaration of Agent as Exhibit "1."

7.  The Listing Agreement provides for a reduced sales commission of 5%. Considering the type and number of properties currently available in the respective area, the Applicant believes that a 5% sales commission is fair and reasonable to ensure a successful marketing program.

8.  Any disputes relating to the Listing Agreement shall be subject to the sole and exclusive jurisdiction of the Bankruptcy Court, sitting without a jury.

9.  Any sale shall be subject to the notice and hearing requirements provided in Title 11 of the United States Code.

10.  Agent is ready to proceed with the promotion of the Property as soon as this Court enters its order approving Agent's employment. Agent's Statement of Disinterestedness For Employment For Professional Person Under Bankruptcy Rule 2014 is incorporated in the accompanying declaration of Agent. Agent will be primarily responsible for marketing the Property. Agent's Curriculum Vitae is attached to the accompanying declaration of Agent as Exhibit "2" and is incorporated herein by this reference.

///

11. The Declaration of Agent, <u>inter alia</u>, provides that Agent has no interest in the Property or in this Estate adverse to the Debtors or to the Estate. Agent is a disinterested person as defined in § 101(14) of Title 11 of the United States Code.

12. The Applicant is informed and believes, and upon such information and belief alleges, that the Listing Agreement according to the terms agreed upon by the parties is fair, equitable and in the best interests of this estate. The Applicant further alleges that the employment of Agent under the terms agreed upon as stated herein should be approved.

13. Agent has been advised of and has agreed to accept employment subject to the provisions of 11 U.S.C. § 328(a) and Agent understands that, notwithstanding approval of her employment by this Court in accordance with the terms herein, the Court may allow compensation different from the compensation provided under the terms of the agreement between the parties, if such proves to have been improvident in light of developments that could not have been reasonably anticipated at the time of filing of such terms.

**WHEREFORE**, the Applicant prays that the employment of Bonnie Kipperman of LEONARD M. SMITH, A CA CORP be approved upon the terms and conditions set forth in the foregoing Application and Listing Agreement.

Dated: 4/21/17

Respectfully Requested,
MALCOLM & CISNEROS
A Law Corporation

By: Arturo M. Cisneros, Esq.
Proposed Counsel for Steven M. Speier, Chapter 7 Trustee For the Estate of Kevan A. Green and Gina K. Green

I:\TRUSTEE REPRESENTATION\SPEIER\Green 116859\EMPLOY RE AGENT BRECKENRIDGE\APP.doc

## DECLARATION OF BONNIE KIPPERMAN

I, Bonnie Kipperman, declare as follows:

1. The matters stated herein are true and correct and within my personal knowledge. If called as a witness, I could and would competently testify thereto.

2. I am a real estate agent, duly licensed in the State of California, with the brokerage firm of Leonard M. Smith, A CA Corp ("Broker"). Broker's offices are located at 8807 Grossmont Blvd., La Mesa, California, phone 619.742.1045.

3. I make this Declaration in support of the Chapter 7 Trustee's Application to Employ Real Estate Agent filed by Steven M. Speier, the Chapter 7 Trustee ("Trustee") for the bankruptcy estate of <u>Kevan A. Green and Dina J. Green</u> ("Debtors"), Case No. 6:16-bk-10251 SY ("Estate").

4. I have agreed to list, show and sell the bankruptcy estate's interest in the real property located at 10899 Breckenridge Drive, San Diego, California 92131 ("Property"); to represent the Trustee as the Seller in connection with the sale of the Property; and advise the Trustee with respect to obtaining the highest and best offers available in the present market.

5. I have reviewed comparable sales and have provided the Trustee with a report of my findings and recommendations with regard to the sale of the Property. I have also conducted an investigation of title and lien information with regard to the Property and provided the same to the Trustee in my report. The suggested listing price is $1,199,000.

6. Trustee intends to enter into a Residential Listing Agreement and Additional Listing Terms (collectively referred to as "Listing Agreement") with me, a copy of which is attached hereto as Exhibit "1."

7. In consideration for the services rendered by me, and subject to further application and Court order, I will receive, upon consummation of any such sale, sales commissions as set forth in the foregoing Application.

8. I am familiar with the foregoing Application and the aforementioned Property and believe that I am qualified to represent the Trustee and the Debtors' Estate in connection with the marketing of the Property.

///

9.  I have agreed to accept employment on the terms and conditions set forth in the Application. Attached hereto and incorporated herein as Exhibit "2" is a copy of my Curriculum Vitae.

10. I have been informed and understand that no sale of the Property may be consummated until after (1) notice to creditors with the opportunity for a hearing on the proposed sale; and (2) entry of a Court Order approving the sale.

11. I have agreed and understand that notwithstanding the terms and conditions of employment herein set forth, that the Court may allow compensation different from the compensation provided herein if such terms and conditions prove to be improvident in light of developments unanticipated at the time of the fixing of such terms and conditions.

12. Neither I, nor any person employed by Broker, have a pre-petition claim against the Debtors' Estate.

13. Neither I, nor any person employed by Broker, have received a retainer for the services to be performed for the Trustee and the Debtors' Estate.

14. To the best of my knowledge, neither I, nor any person employed by Broker, have any connection with the Trustee, the Trustee's attorneys or accountants, the Debtors, the Debtors' attorneys or accountants, the Debtors' creditors, the United States Trustee, or any person employed in the office of the United States Trustee, or any other outside party in interest, or their respective attorneys or accountants.

15. To the best of my knowledge, neither I, nor any person employed by Broker, have an interest adverse to the Debtors or the Estate.

16. To the best of my knowledge, I am a "disinterested person" as that term is defined in Bankruptcy Code Section 101(14).

I declare under penalty of perjury that the foregoing is true and correct and this declaration was executed at _La Mesa_, California.

Dated: 4/21/2017

_Bonnie K_____
Bonnie Kipperman

# EXHIBIT "1"



**CALIFORNIA ASSOCIATION OF REALTORS®**

**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP**
(Listing Firm to Seller)
(As required by the Civil Code)
(C.A.R. Form AD, Revised 12/14)

☐ (If checked) This form is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code section 2079.13(k) and (l).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

**SELLER'S AGENT**
A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:
To the Seller: A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.
To the Buyer and the Seller:
  (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
  (b) A duty of honest and fair dealing and good faith.
  (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**BUYER'S AGENT**
A selling agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:
To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.
To the Buyer and the Seller:
  (a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
  (b) A duty of honest and fair dealing and good faith.
  (c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties.
An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**AGENT REPRESENTING BOTH SELLER AND BUYER**
A real estate agent, either acting directly or through one or more associate licensees, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.
In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
  (a) A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
  (b) Other duties to the Seller and the Buyer as stated above in their respective sections.
In representing both Seller and Buyer, the agent may not, without the express permission of the respective party, disclose to the other party that the Seller will accept a price less than the listing price or that the Buyer will pay a price greater than the price offered.

The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully. I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE BACK (OR A SEPARATE PAGE).

☐ Buyer ☒ Seller ☐ Landlord ☐ Tenant _____ Date 4-11-17
STEVEN M. SPEIER, CH 7 TRUSTEE

☐ Buyer ☐ Seller ☐ Landlord ☐ Tenant _____ Date _____

Agent _____ **LEONARD M SMITH, A CA CORP** _____ BRE Lic. # **00865064**
Real Estate Broker (Firm)
By _____ BRE Lic. # **01104734** _____ Date **04/06/2017**
(Salesperson or Broker-Associate)    **BONNIE KIPPERMAN**

Agency Disclosure Compliance (Civil Code §2079.14):
• When the listing brokerage company also represents Buyer/Tenant: The Listing Agent shall have one AD form signed by Seller/Landlord and a different AD form signed by Buyer/Tenant.
• When Seller/Landlord and Buyer/Tenant are represented by different brokerage companies: (i) the Listing Agent shall have one AD form signed by Seller/Landlord and (ii) the Buyer's/Tenant's Agent shall have one AD form signed by Buyer/Tenant and either that same or a different AD form presented to Seller/Landlord for signature prior to presentation of the offer. If the same form is used, Seller may sign here:

_____(SELLER/LANDLORD: DO NOT SIGN HERE)_____    _____(SELLER/LANDLORD: DO NOT SIGN HERE)_____
Seller/Landlord _____ Date _____    Seller/Landlord _____ Date _____

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.
AD REVISED 12/14 (PAGE 1 OF 2)

| Reviewed by _____ Date _____ |

**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)**

Leonard Smith 8807 Grossmont Blvd.   La Mesa , CA 91941    Phone: 619.463.4488   Fax: 619.463.0709   10889 Breckenr
Bonnie Kipperman    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

**EXHIBIT "1"**

## CIVIL CODE SECTIONS 2079.24 (2079.16 APPEARS ON THE FRONT)

2079.13 As used in Sections 2079.14 to 2079.24, inclusive, the following terms have the following meanings: (a) "Agent" means a person acting under provisions of Title 9 (commencing with Section 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. (b) "Associate licensee" means a person who is licensed as a real estate broker or salesperson under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code and who is either licensed under a broker or has entered into a written contract with a broker to act as the broker's agent in connection with acts requiring a real estate license and to function under the broker's supervision in the capacity of an associate licensee. The agent in the real property transaction bears responsibility for his or her associate licensees who perform as agents of the agent. When an associate licensee owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the associate licensee functions. (c) "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes vendee or lessee. (d) "Commercial real property" means all real property in the state, except single-family residential real property, dwelling units made subject to Chapter 2 (commencing with Section 1940) of Title 5, mobilehomes, as defined in Section 798.3, or recreational vehicles, as defined in Section 799.29. (e) "Dual agent" means an agent acting, either directly or through an associate licensee, as agent for both the seller and the buyer in a real property transaction. (f) "Listing agreement" means a contract between an owner of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer. (g) "Listing agent" means a person who has obtained a listing of real property to act as an agent for compensation. (h) "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the listing agent. (i) "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. (j) "Offer to purchase" means a written contract executed by a buyer acting through a selling agent that becomes the contract for the sale of the real property upon acceptance by the seller. (k) "Real property" means any estate specified by subdivision (1) or (2) of Section 761 in property that constitutes or is improved with one to four dwelling units, any commercial real property, any leasehold in these types of property exceeding one year's duration, and mobilehomes, when offered for sale or sold through an agent pursuant to the authority contained in Section 10131.6 of the Business and Professions Code. (l) "Real property transaction" means a transaction for the sale of real property in which an agent is employed by one or more of the principals to act in that transaction, and includes a listing or an offer to purchase. (m) "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer, and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration. (n) "Seller" means the transferor in a real property transaction, and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor. (o) "Selling agent" means a listing agent who acts alone, or an agent who acts in cooperation with a listing agent, and who sells or finds and obtains a buyer for the real property, or an agent who locates property for a buyer or who finds a buyer for a property for which no listing exists and presents an offer to purchase to the seller. (p) "Subagent" means a person to whom an agent delegates agency powers as provided in Article 5 (commencing with Section 2349) of Chapter 1 of Title 9. However, "subagent" does not include an associate licensee who is acting under the supervision of an agent in a real property transaction.

2079.14 Listing agents and selling agents shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in Section 2079.16, and, except as provided in subdivision (c), shall obtain a signed acknowledgement of receipt from that seller or buyer, except as provided in this section or Section 2079.15, as follows: (a) The listing agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. (b) The selling agent shall provide the disclosure form to the seller as soon as practicable prior to presenting the seller with an offer to purchase, unless the selling agent previously provided the seller with a copy of the disclosure form pursuant to subdivision (a). (c) Where the selling agent does not deal on a face-to-face basis with the seller, the disclosure form prepared by the selling agent may be furnished to the seller (and acknowledgement of receipt obtained for the selling agent from the seller) by the listing agent, or the selling agent may deliver the disclosure form by certified mail addressed to the seller at his or her last known address, in which case no signed acknowledgement of receipt is required. (d) The selling agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase, except that if the offer to purchase is not prepared by the selling agent, the selling agent shall present the disclosure form to the buyer not later than the next business day after the selling agent receives the offer to purchase from the buyer.

2079.15 In any circumstance in which the seller or buyer refuses to sign an acknowledgement of receipt pursuant to Section 2079.14, the agent, or an associate licensee acting for an agent, shall set forth, sign, and date a written declaration of the facts of the refusal.

2079.16 Reproduced on Page 1 of this AD form.

2079.17 (a) As soon as practicable, the selling agent shall disclose to the buyer and seller whether the selling agent is acting in the real property transaction exclusively as the buyer's agent, exclusively as the seller's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the selling agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. (b) As soon as practicable, the listing agent shall disclose to the seller whether the listing agent is acting in the real property transaction exclusively as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the listing agent prior to or coincident with the execution of that contract by the seller.

(c) The confirmation required by subdivisions (a) and (b) shall be in the following form.

_____(DO NOT COMPLETE. SAMPLE ONLY)_____ is the agent of (check one): ☐ the seller exclusively; or ☐ both the buyer and seller.
(Name of Listing Agent)

_____(DO NOT COMPLETE. SAMPLE ONLY)_____ is the agent of (check one): ☐ the buyer exclusively; or ☐ the seller exclusively; or
(Name of Selling Agent if not the same as the Listing Agent)     ☐ both the buyer and seller.

(d) The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14.

2079.18 No selling agent in a real property transaction may act as an agent for the buyer only, when the selling agent is also acting as the listing agent in the transaction.

2079.19 The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.

2079.20 Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of Section 2079.14 and Section 2079.17 are complied with.

2079.21 A dual agent shall not disclose to the buyer that the seller is willing to sell the property at a price less than the listing price, without the express written consent of the seller. A dual agent shall not disclose to the seller that the buyer is willing to pay a price greater than the offering price, without the express written consent of the buyer. This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.

2079.22 Nothing in this article precludes a listing agent from also being a selling agent, and the combination of these functions in one agent does not, of itself, make that agent a dual agent.

2079.23 A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.

2079.24 Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by_____ Date _____



AD REVISED 12/14 (PAGE 2 OF 2)

**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com     10889 Breckenr

**EXHIBIT "1"**

**CALIFORNIA ASSOCIATION OF REALTORS®**

# RESIDENTIAL LISTING AGREEMENT
(Exclusive Authorization and Right to Sell)
(C.A.R. Form RLA, Revised 12/15)

Date Prepared: **04/06/2017**

1. **EXCLUSIVE RIGHT TO SELL:** **STEVEN M. SPEIER, CH 7 TRUSTEE** ("Seller")
hereby employs and grants **LEONARD M SMITH, A CA CORP** ("Broker")
beginning (date) **April 6, 2017** and ending at 11:59 P.M. on (date) **October 6, 2017** ("Listing Period")
the exclusive and irrevocable right to sell or exchange the real property described as **10889 BRECKENRIDGE DRIVE**
, situated in **SAN DIEGO** (City),
**SAN DIEGO** (County), California, **92131** (Zip Code), Assessor's Parcel No. **319-800-17-00** ("Property").
☐ This Property is a manufactured (mobile) home. See addendum for additional terms.
☐ This Property is being sold as part of a probate, conservatorship or guardianship. See addendum for additional terms.

2. **LISTING PRICE AND TERMS:**
   A. The listing price shall be: **One Million, One Hundred Ninety-Nine Thousand**
      Dollars ($ **1,199,000.00** ).
   B. Listing Terms: _____

3. **COMPENSATION TO BROKER:**
   Notice: The amount or rate of real estate commissions is not fixed by law. They are set by each Broker individually and may be negotiable between Seller and Broker (real estate commissions include all compensation and fees to Broker).
   A. Seller agrees to pay to Broker as compensation for services irrespective of agency relationship(s), either ☒ **5.000** percent of the listing price (or if a purchase agreement is entered into, of the purchase price), or ☐ $ _____,
   AND _____, as follows:
   (1) If during the Listing Period, or any extension, Broker, cooperating broker, Seller or any other person procures a ready, willing, and able buyer(s) whose offer to purchase the Property on any price and terms is accepted by Seller, provided the Buyer completes the transaction or is prevented from doing so by Seller. (Broker is entitled to compensation whether any escrow resulting from such offer closes during or after the expiration of the Listing Period, or any extension.)
   OR (2) If within _____ calendar days (a) after the end of the Listing Period or any extension; or (b) after any cancellation of this Agreement, unless otherwise agreed, Seller enters into a contract to sell, convey, lease or otherwise transfer the Property to anyone ("Prospective Buyer") or that person's related entity: (i) who physically entered and was shown the Property during the Listing Period or any extension by Broker or a cooperating broker; or (ii) for whom Broker or any cooperating broker submitted to Seller a signed, written offer to acquire, lease, exchange or obtain an option on the Property. Seller, however, shall have no obligation to Broker under paragraph 3A(2) unless, not later than the end of the Listing Period or any extension or cancellation, Broker has given Seller a written notice of the names of such Prospective Buyers.
   OR (3) If, without Broker's prior written consent, the Property is withdrawn from sale, conveyed, leased, rented, otherwise transferred, or made unmarketable by a voluntary act of Seller during the Listing Period, or any extension.
   B. If completion of the sale is prevented by a party to the transaction other than Seller, then compensation which otherwise would have been earned under paragraph 3A shall be payable only if and when Seller collects damages by suit, arbitration, settlement or otherwise, and then in an amount equal to the lesser of one-half of the damages recovered or the above compensation, after first deducting title and escrow expenses and the expenses of collection, if any.
   C. In addition, Seller agrees to pay Broker: _____
   D. Seller has been advised of Broker's policy regarding cooperation with, and the amount of compensation offered to, other brokers.
      (1) Broker is authorized to cooperate with and compensate brokers participating through the multiple listing service(s) ("MLS") by offering to MLS brokers out of Broker's compensation specified in 3A, either ☐ _____ percent of the purchase price, or ☐ $ _____ .
      (2) Broker is authorized to cooperate with and compensate brokers operating outside the MLS as per Broker's policy.
   E. Seller hereby irrevocably assigns to Broker the above compensation from Seller's funds and proceeds in escrow. Broker may submit this Agreement, as instructions to compensate Broker pursuant to paragraph 3A, to any escrow regarding the Property involving Seller and a buyer, Prospective Buyer or other transferee.
   F. (1) Seller represents that Seller has not previously entered into a listing agreement with another broker regarding the Property, unless specified as follows: _____
      (2) Seller warrants that Seller has no obligation to pay compensation to any other broker regarding the Property unless the Property is transferred to any of the following individuals or entities: _____
      (3) If the Property is sold to anyone listed above during the time Seller is obligated to compensate another broker: (i) Broker is not entitled to compensation under this Agreement; and (ii) Broker is not obligated to represent Seller in such transaction.

4. A. **ITEMS EXCLUDED AND INCLUDED:** Unless otherwise specified in a real estate purchase agreement, all fixtures and fittings that are attached to the Property are included, and personal property items are excluded, from the purchase price.
   ADDITIONAL ITEMS EXCLUDED: _____
   ADDITIONAL ITEMS INCLUDED: _____

Seller's Initials ( _/S/_ )( _____ )

© 2015, California Association of REALTORS®, Inc.
RLA REVISED 12/15 (PAGE 1 OF 5)

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 1 OF 5)**

Leonard Smith 8807 Grossmont Blvd.  La Mesa  , CA 91941  Phone: 619.463.4488  Fax: 619.463.0709  10889 Breckenr
Bonnie Kipperman  Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

EXHIBIT "1"

Property Address: **10889 BRECKENRIDGE DRIVE, SAN DIEGO, 92131**                                    Date: **04/06/2017**

Seller intends that the above items be excluded or included in offering the Property for sale, but understands that: (i) the purchase agreement supersedes any intention expressed above and will ultimately determine which items are excluded and included in the sale; and (ii) Broker is not responsible for and does not guarantee that the above exclusions and/or inclusions will be in the purchase agreement.

B. **(1) Leased Items:** The following items are leased:
☐ Solar power system   ☐ Alarm system   ☐ Propane tank   ☐ Water Softener
☐ Other _____

**(2) Liened Items:** The following items have been financed and a lien has been placed on the Property to secure payment:
☐ Solar power system   ☐ Windows or doors   ☐ Heating/Ventilation/Air conditioning system
☐ Other _____

Seller will provide to Buyer, as part of the sales agreement, copies of lease documents, or other documents obligating Seller to pay for any such leased or liened item.

5. **MULTIPLE LISTING SERVICE:**
A. Broker is a participant/subscriber to _____ Multiple Listing Service (MLS) and possibly others. Unless otherwise instructed in writing the Property will be listed with the MLS(s) specified above. That MLS is (or if checked ☐ is not) the primary MLS for the geographic area of the Property. All terms of the transaction, including sales price and financing, if applicable, (i) will be provided to the MLS in which the property is listed for publication, dissemination and use by persons and entities on terms approved by the MLS and (ii) may be provided to the MLS even if the Property was not listed with the MLS.

---

**BENEFITS OF USING THE MLS; IMPACT OF OPTING OUT OF THE MLS; PRESENTING ALL OFFERS**

**WHAT IS AN MLS?** The MLS is a database of properties for sale that is available and disseminated to and accessible by all other real estate agents who are participants or subscribers to the MLS. Property information submitted to the MLS describes the price, terms and conditions under which the Seller's property is offered for sale (including but not limited to the listing broker's offer of compensation to other brokers). It is likely that a significant number of real estate practitioners in any given area are participants or subscribers to the MLS. The MLS may also be part of a reciprocal agreement to which other multiple listing services belong. Real estate agents belonging to other multiple listing services that have reciprocal agreements with the MLS also have access to the information submitted to the MLS. The MLS may further transmit listing information to Internet sites that post property listings online.

**EXPOSURE TO BUYERS THROUGH MLS:** Listing property with an MLS exposes a seller's property to all real estate agents and brokers (and their potential buyer clients) who are participants or subscribers to the MLS or a reciprocating MLS.

**CLOSED/PRIVATE LISTING CLUBS OR GROUPS:** Closed or private listing clubs or groups are not the same as the MLS. The MLS referred to above is accessible to all eligible real estate licensees and provides broad exposure for a listed property. Private or closed listing clubs or groups of licensees may have been formed outside the MLS. Private or closed listing clubs or groups are accessible to a more limited number of licensees and generally offer less exposure for listed property. Whether listing property through a closed, private network - and excluding it from the MLS - is advantageous or disadvantageous to a seller, and why, should be discussed with the agent taking the Seller's listing.

**NOT LISTING PROPERTY IN A LOCAL MLS:** If the Property is listed in an MLS which does not cover the geographic area where the Property is located then real estate agents and brokers working that territory, and Buyers they represent looking for property in the neighborhood, may not be aware the Property is for sale.

**OPTING OUT OF MLS:** If Seller elects to exclude the Property from the MLS, Seller understands and acknowledges that: (a) real estate agents and brokers from other real estate offices, and their buyer clients, who have access to that MLS may not be aware that Seller's Property is offered for sale; (b) Information about Seller's Property will not be transmitted from the MLS to various real estate Internet sites that are used by the public to search for property listings; (c) real estate agents, brokers and members of the public may be unaware of the terms and conditions under which Seller is marketing the Property.

**REDUCTION IN EXPOSURE:** Any reduction in exposure of the Property may lower the number of offers and negatively impact the sales price.

**PRESENTING ALL OFFERS:** Seller understands that Broker must present all offers received for Seller's Property unless Seller gives Broker written instructions to the contrary.

Seller's Initials ( _[signed]_ )( _____ )         Broker's/agent's Initials ( _____ )( _____ )

---

B. MLS rules generally provide that residential real property and vacant lot listings be submitted to the MLS within 2 days or some other period of time after all necessary signatures have been obtained on the listing agreement. Broker will not have to submit this listing to the MLS if, within that time, Broker submits to the MLS an appropriate form signed by Seller.
☐ Seller elects to exclude the Property from the MLS as provided by C.A.R. Form SELM or the local equivalent form.

Seller's Initials ( _[signed]_ )( _____ )

RLA REVISED 12/15 (PAGE 2 OF 5)
**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 2 OF 5)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com       10889 Breckenr

**EXHIBIT "1"**

Property Address: <u>10889 BRECKENRIDGE DRIVE, SAN DIEGO, 92131</u> Date: <u>04/06/2017</u>

C. MLS rules allow MLS data to be made available by the MLS to additional Internet sites unless Broker gives the MLS instructions to the contrary. Seller acknowledges that for any of the below opt-out instructions to be effective, Seller must make them on a separate instruction to Broker signed by Seller. Specific information that can be excluded from the Internet as permitted by (or in accordance with) the MLS is as follows:
(1) Property Availability: Seller can instruct Broker to have the MLS not display the Property on the Internet.
(2) Property Address: Seller can instruct Broker to have the MLS not display the Property address on the Internet.
Seller understands that the above opt-outs would mean consumers searching for listings on the Internet may not see the Property or Property's address in response to their search.
(3) Feature Opt-Outs: Seller can instruct Broker to advise the MLS that Seller does not want visitors to MLS Participant or Subscriber Websites or Electronic Displays that display the Property listing to have the features below. Seller understands (i) that these opt-outs apply only to Websites or Electronic Displays of MLS Participants and Subscribers who are real estate broker and agent members of the MLS; (ii) that other Internet sites may or may not have the features set forth herein; and (iii) that neither Broker nor the MLS may have the ability to control or block such features on other Internet sites.
(a) Comments And Reviews: The ability to write comments or reviews about the Property on those sites; or the ability to link to another site containing such comments or reviews if the link is in immediate conjunction with the Property display.
(b) Automated Estimate Of Value: The ability to create an automated estimate of value or to link to another site containing such an estimate of value if the link is in immediate conjunction with the Property display. ☐ Seller elects to opt out of certain Internet features as provided by C.A.R. Form SELI or the local equivalent form.

6. **SELLER REPRESENTATIONS:** Seller represents that, unless otherwise specified in writing, Seller is unaware of: (i) any Notice of Default recorded against the Property; (ii) any delinquent amounts due under any loan secured by, or other obligation affecting, the Property; (iii) any bankruptcy, insolvency or similar proceeding affecting the Property; (iv) any litigation, arbitration, administrative action, government investigation or other pending or threatened action that affects or may affect the Property or Seller's ability to transfer it; and (v) any current, pending or proposed special assessments affecting the Property. Seller shall promptly notify Broker in writing if Seller becomes aware of any of these items during the Listing Period or any extension thereof.

7. **BROKER'S AND SELLER'S DUTIES:**
   A. Broker agrees to exercise reasonable effort and due diligence to achieve the purposes of this Agreement. Unless Seller gives Broker written instructions to the contrary, Broker is authorized, but not required, to (i) order reports and disclosures including those specified in 7C as necessary, (ii) advertise and market the Property by any method and in any medium selected by Broker, including MLS and the Internet, and, to the extent permitted by these media, control the dissemination of the information submitted to any medium; and (iii) disclose to any real estate licensee making an inquiry the receipt of any offers on the Property and the offering price of such offers.
   B. Seller agrees to consider offers presented by Broker, and to act in good faith to accomplish the sale of the Property by, among other things, making the Property available for showing at reasonable times and, subject to paragraph 3F, referring to Broker all inquiries of any party interested in the Property. Seller is responsible for determining at what price to list and sell the Property.
   C. Investigations and Reports: Seller agrees, within 5 (or___) Days of the beginning date of this Agreement, to pay for the following pre-sale reports: ☐ Structural Pest Control ☐ General Property Inspection ☐ Homeowners Association Documents ☐ Other _____.
   D. Seller further agrees to indemnify, defend and hold Broker harmless from all claims, disputes, litigation, judgments attorney fees and costs arising from any incorrect or incomplete information supplied by Seller, or from any material facts that Seller knows but fails to disclose.

8. **DEPOSIT:** Broker is authorized to accept and hold on Seller's behalf any deposits to be applied toward the purchase price.

9. **AGENCY RELATIONSHIPS:**
   A. Disclosure: The Seller acknowledges receipt of a ☒ "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD).
   B. Seller Representation: Broker shall represent Seller in any resulting transaction, except as specified in paragraph 3F.
   C. Possible Dual Agency With Buyer: Depending upon the circumstances, it may be necessary or appropriate for Broker to act as an agent for both Seller and buyer, exchange party, or one or more additional parties ("Buyer"). Broker shall, as soon as practicable, disclose to Seller any election to act as a dual agent representing both Seller and Buyer. If a Buyer is procured directly by Broker or an associate-licensee in Broker's firm, Seller hereby consents to Broker acting as a dual agent for Seller and Buyer. In the event of an exchange, Seller hereby consents to Broker collecting compensation from additional parties for services rendered, provided there is disclosure to all parties of such agency and compensation. Seller understands and agrees that: (i) Broker, without the prior written consent of Seller, will not disclose to Buyer that Seller is willing to sell the Property at a price less than the listing price; (ii) Broker, without the prior written consent of Buyer, will not disclose to Seller that Buyer is willing to pay a price greater than the offered price; and (iii) except for (i) and (ii) above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the Property to both parties.
   D. Confirmation: If the Property includes residential property with one-to-four dwelling units, Broker shall confirm the agency relationship described above, or as modified, in writing, prior to or concurrent with Seller's execution of a purchase agreement.
   E. Potentially Competing Sellers and Buyers: Seller understands that Broker may have or obtain listings on other properties, and that potential buyers may consider, make offers on, or purchase through Broker, property the same as or similar to Seller's Property. Seller consents to Broker's representation of sellers and buyers of other properties before, during and after the end of this Agreement. Seller acknowledges receipt of a ☒ "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).

Seller's Initials ( _____ ) ( _____ )

RLA REVISED 12/15 (PAGE 3 OF 5)
RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 3 OF 5)
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com    10889 Breckenr

EXHIBIT "1"

Property Address: <u>*10889 BRECKENRIDGE DRIVE, SAN DIEGO, 92131*</u>                                              Date: <u>*04/06/2017*</u>

10. **SECURITY AND INSURANCE:** Broker is not responsible for loss of or damage to personal or real property, or person, whether attributable to use of a keysafe/lockbox, a showing of the Property, or otherwise. Third parties, including, but not limited to, appraisers, inspectors, brokers and prospective buyers, may have access to, and take videos and photographs of, the interior of the Property. Seller agrees: (i) to take reasonable precautions to safeguard and protect valuables that might be accessible during showings of the Property; and (ii) to obtain insurance to protect against these risks. Broker does not maintain insurance to protect Seller.

11. **PHOTOGRAPHS AND INTERNET ADVERTISING:**
    A. In order to effectively market the Property for sale it is often necessary to provide photographs, virtual tours and other media to buyers. Seller agrees (or ☐ checked, does not agree) that Broker may photograph or otherwise electronically capture images of the exterior and interior of the Property ("Images") for static and/or virtual tours of the Property by buyers and others for use on Broker's website, the MLS, and other marketing materials and sites. Seller acknowledges that once Images are placed on the Internet neither Broker nor Seller has control over who can view such Images and what use viewers may make of the Images, or how long such Images may remain available on the Internet. Seller further assigns any rights in all Images to the Broker and agrees that such Images are the property of Broker and that Broker may use such Images for advertising, including post sale and for Broker's business in the future.
    B. Seller acknowledges that prospective buyers and/or other persons coming onto the property may take photographs, videos or other images of the property. Seller understands that Broker does not have the ability to control or block the taking and use of Images by any such persons. (If checked ) ☐ Seller instructs Broker to publish in the MLS that taking of Images is limited to those persons preparing Appraisal or Inspection reports. Seller acknowledges that unauthorized persons may take images who do not have access to or have not read any limiting instruction in the MLS or who take images regardless of any limiting instruction in the MLS. Once Images are taken and/or put into electronic display on the Internet or otherwise, neither Broker nor Seller has control over who views such Images nor what use viewers may make of the Images.

12. **KEYSAFE/LOCKBOX:** A keysafe/lockbox is designed to hold a key to the Property to permit access to the Property by Broker, cooperating brokers, MLS participants, their authorized licensees and representatives, authorized inspectors, and accompanied prospective buyers. Broker, cooperating brokers, MLS and Associations/Boards of REALTORS® are not insurers against injury, theft, loss, vandalism or damage attributed to the use of a keysafe/lockbox. Seller does (or if checked ☐ does not) authorize Broker to install a keysafe/lockbox. If Seller does not occupy the Property, Seller shall be responsible for obtaining occupant(s)' written permission for use of a keysafe/lockbox (C.A.R. Form KLA).

13. **SIGN:** Seller does (or if checked ☐ does not) authorize Broker to install a FOR SALE/SOLD sign on the Property.

14. **EQUAL HOUSING OPPORTUNITY:** The Property is offered in compliance with federal, state and local anti-discrimination laws.

15. ~~**ATTORNEY FEES:** In any action, proceeding or arbitration between Seller and Broker regarding the obligation to pay compensation under this Agreement, the prevailing Seller or Broker shall be entitled to reasonable attorney fees and costs from the non-prevailing Seller or Broker, except as provided in paragraph 19A.~~

16. **ADDITIONAL TERMS:** ☐ REO Advisory Listing (C.A.R. Form REOL) ☐ Short Sale Information and Advisory (C.A.R. Form SSIA)
    ☐ Trust Advisory (C.A.R. Form TAL) *SALE AND COMMISSION SUBJECT TO BANKRUPTCY COURT APPROVAL; SEE ADDENDA #1 AND #2 FOR BALANCE OF TERMS AND CONDITIONS.*

17. **MANAGEMENT APPROVAL:** If an associate-licensee in Broker's office (salesperson or broker-associate) enters into this Agreement on Broker's behalf, and Broker or Manager does not approve of its terms, Broker or Manager has the right to cancel this Agreement, in writing, within **5 Days** After its execution.

18. **SUCCESSORS AND ASSIGNS:** This Agreement shall be binding upon Seller and Seller's successors and assigns.

19. ~~**DISPUTE RESOLUTION:**~~
    A. ~~**MEDIATION:** Seller and Broker agree to mediate any dispute or claim arising between them regarding the obligation to pay~~ compensation under this Agreement, before resorting to arbitration or court action. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED. Exclusions from this mediation agreement are specified in paragraph 19C.
    B. **ARBITRATION OF DISPUTES:**
    Seller and Broker agree that any dispute or claim in Law or equity arising between them regarding the obligation to pay compensation under this Agreement, which is not settled through mediation, shall be decided by neutral, binding arbitration. The arbitrator shall be a retired judge or justice, or an attorney with at least **5** years of residential real estate Law experience, unless the parties mutually agree to a different arbitrator. The parties shall have the right to discovery in accordance with Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Enforcement of this agreement to arbitrate shall be governed by the Federal ~~Arbitration Act. Exclusions from this arbitration agreement are specified in paragraph 19C.~~

Seller's Initials ( _____ )( _____ )

RLA REVISED 12/15 (PAGE 4 OF 5)

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 4 OF 5)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com        10889 Breckenr

**EXHIBIT "1"**

Property Address: __10889 BRECKENRIDGE DRIVE, SAN DIEGO, 92131__ Date: __04/06/2017__

"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."

"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."

Seller's Initials ____/____    Broker's/agent's Initials ____/____

C. **ADDITIONAL MEDIATION AND ARBITRATION TERMS:** The following matters shall be excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver or violation of the mediation and arbitration provisions.

20. **ENTIRE AGREEMENT:** All prior discussions, negotiations and agreements between the parties concerning the subject matter of this Agreement are superseded by this Agreement, which constitutes the entire contract and a complete and exclusive expression of their agreement, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. This Agreement and any supplement, addendum or modification, including any photocopy or facsimile, may be executed in counterparts.

21. **OWNERSHIP, TITLE AND AUTHORITY:** Seller warrants that: (i) Seller is the owner of the Property; (ii) no other persons or entities have title to the Property; and (iii) Seller has the authority to both execute this Agreement and sell the Property. Exceptions to ownership, title and authority are as follows:_____

☐ **REPRESENTATIVE CAPACITY:** This Listing Agreement is being signed for Seller by an individual acting in a Representative Capacity as specified in the attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-S). Wherever the signature or initials of the representative identified in the RCSD appear on this Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. Seller (i) represents that the entity for which the individual is signing already exists and (ii) shall Deliver to Broker, within 3 Days After Execution of this Agreement, evidence of authority to act (such as but not limited to: applicable trust document, or portion thereof, letters testamentary, court order, power of attorney, resolution, or formation documents of the business entity).

By signing below, Seller acknowledges that Seller has read, understands, received a copy of and agrees to the terms of this Agreement.

Seller _____ Date __4-11-17__
STEVEN M. SPEIER, CH 7 TRUSTEE
Address __P.O. BOX 7637__    City __NEWPORT BEACH__    State __CA__    Zip __92658__
Telephone __(949)336-1898__    Fax _____    E-mail __SSPEIER@GLASSRATNER.COM__

Seller _____ Date _____
Address _____    City _____    State _____    Zip _____
Telephone _____    Fax _____    E-mail _____

Real Estate Broker (Firm) __LEONARD M SMITH, A CA CORP__    Cal BRE Lic. # __00865064__
Address __8807 GROSSMONT BL__    City __LA MESA__    State __CA__    Zip __91942__
By __[signature]__    Tel. __(619)742-1045__    E-mail __BONNIEBJK@GMAIL.COM__    CalBRE Lic.# __01104734__    Date __04/06/2017__
BONNIE KIPPERMAN
By _____    Tel. _____    E-mail _____    CalBRE Lic.# _____    Date _____

☐ Two Brokers with different companies are co-listing the property. Co-listing Broker information is on the attached Additional Broker Acknowledgement (C.A.R. Form ABA).

© 1991-2015, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

RLA REVISED 12/15 (PAGE 5 OF 5)

**RESIDENTIAL LISTING AGREEMENT - EXCLUSIVE (RLA PAGE 5 OF 5)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com    10889

**EXHIBIT "1"**

**CALIFORNIA ASSOCIATION OF REALTORS®**

**SELLER'S ADVISORY**
(C.A.R. Form SA, Revised 12/15)

Property Address: **10889 BRECKENRIDGE DRIVE, SAN DIEGO, 92131** ("Property")

1. **INTRODUCTION:** Selling property in California is a process that involves many steps. From start to finish, it could take anywhere from a few weeks to many months, depending upon the condition of your Property, local market conditions and other factors. You have already taken an important first step by listing your Property for sale with a licensed real estate broker. Your broker will help guide you through the process and may refer you to other professionals, as needed. This advisory addresses many things you may need to think about and do as you market your Property. Some of these things are requirements imposed upon you, either by law or by the listing or sale contract. Others are simply practical matters that may arise during the process. Please read this document carefully and, if you have any questions, ask your broker or appropriate legal or tax advisor for help.

2. **DISCLOSURES:**
   A. **General Disclosure Duties:** You must affirmatively disclose to the buyer, in writing, any and all known facts that materially affect the value or desirability of your Property. You must disclose these facts whether or not asked about such matters by the buyer, any broker, or anyone else. This duty to disclose applies even if the buyer agrees to purchase your Property in its present condition without requiring you to make any repairs. If you do not know what or how to disclose, you should consult a real estate attorney in California of your choosing. Broker cannot advise you on the legal sufficiency of any disclosures you make. If the Property you are selling is a residence with one to four units except for certain subdivisions, your broker also has a duty to conduct a reasonably competent and diligent visual inspection of the accessible areas and to disclose to a buyer all adverse material facts that the inspection reveals. If your broker discovers something that could indicate a problem, your broker must advise the buyer.
   B. **Statutory Duties:** (For one-to-four Residential Units):
      (1) You must timely prepare and deliver to the buyer, among other things, a Real Estate Transfer Disclosure Statement ("TDS"), and a Natural Hazard Disclosure Statement ("NHD"). You have a legal obligation to honestly and completely fill out the TDS form in its entirety. (Many local entities or organizations have their own supplement to the TDS that you may also be asked to complete.) The NHD is a statement indicating whether your Property is in certain designated flood, fire or earthquake/seismic hazard zones. Third-party professional companies can help you with this task.
      (2) Depending upon the age and type of construction of your Property, you may also be required to provide and, in certain cases you can receive limited legal protection by providing, the buyer with booklets entitled "The Homeowner's Guide to Earthquake Safety," "The Commercial Property Owner's Guide to Earthquake Safety," "Protect Your Family From Lead in Your Home" and "Environmental Hazards: A Guide For Homeowners and Buyers." Some of these booklets may be packaged together for your convenience. The earthquake guides ask you to answer specific questions about your Property's structure and preparedness for an earthquake. If you are required to supply the booklet about lead, you will also be required to disclose to the buyer any known lead-based paint and lead-based paint hazards on a separate form. The environmental hazards guide informs the buyer of common environmental hazards that may be found in properties.
      (3) If you know that your property is: (i) located within one mile of a former military ordnance location; or (ii) in or affected by a zone or district allowing manufacturing, commercial or airport use, you must disclose this to the buyer. You are also required to make a good faith effort to obtain and deliver to the buyer a disclosure notice from the appropriate local agency(ies) about any special tax levied on your Property pursuant to the Mello-Roos Community Facilities Act, the Improvement Bond Act of 1915, and a notice concerning the contractual assessment provided by section 5898.24 of the Streets And Highways Code (collectively, "Special Tax Disclosures").
      (4) If the TDS, NHD, or lead, military ordnance, commercial zone or Special Tax Disclosures are provided to a buyer after you accept that buyer's offer, the buyer will have 3 days after delivery (or 5 days if mailed) to terminate the offer, which is why it is extremely important to complete these disclosures as soon as possible. There are certain exemptions from these statutory requirements; however, if you have actual knowledge of any of these items, you may still be required to make a disclosure as the items can be considered material facts.
   C. **Death and Other Disclosures:** Many buyers consider death on real property to be a material fact in the purchase of property. In some situations, it is advisable to disclose that a death occurred or the manner of death; however, California Civil Code Section 1710.2 provides that you have no disclosure duty "where the death has occurred more than three years prior to the date the transferee offers to purchase, lease, or rent the real property, or [regardless of the date of occurrence] that an occupant of that property was afflicted with, or died from, Human T-Lymphotropic Virus Type III/Lymphadenopathy-Associated Virus." This law does not "immunize an owner or his or her agent from making an intentional misrepresentation in response to a direct inquiry from a transferee or a prospective transferee of real property, concerning deaths on the real property."
   D. **Condominiums and Other Common Interest Subdivisions:** If the Property is a condominium, townhouse, or other property in a common interest subdivision, you must provide to the buyer copies of the governing documents, the most recent financial statements distributed, and other documents required by law or contract. If you do not have a current version of these documents, you can request them from the management of your homeowner's association. To avoid delays, you are encouraged to obtain these documents as soon as possible, even if you have not yet entered into a purchase agreement to sell your Property.

3. **CONTRACT TERMS AND LEGAL REQUIREMENTS:**
   A. **Contract Terms and Conditions:** A buyer may request, as part of the contract for the sale of your Property, that you pay for repairs to the Property and other items. Your decision on whether or not to comply with a buyer's requests may affect your ability to sell your Property at a specified price.

© 1991-2015, California Association of REALTORS®, Inc.
SA REVISED 12/15 (PAGE 1 OF 2)

Seller's Initials ( ___ ) ( ___ )

**SELLER'S ADVISORY (SA PAGE 1 OF 2)**

Leonard Smith 8807 Grossmont Blvd.   La Mesa   , CA 91941                 Phone: 619.463.4488       Fax: 619.463.0709       10889 Breckenr
Bonnie Kipperman          Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

EXHIBIT "1"

Property Address: <u>10889 BRECKENRIDGE DRIVE, SAN DIEGO, 92131</u>                                Date: <u>04/06/2017</u>

- B. **Withholding Taxes:** Under federal and California tax laws, a buyer is required to withhold a portion of the purchase price from your sale proceeds for tax purposes unless you sign an affidavit of non-foreign status and California residency, or some other exemption applies and is documented.
- C. **Prohibition Against Discrimination:** Discriminatory conduct in the sale of real property against individuals belonging to legally protected classes is a violation of the law.
- D. **Government Required Repairs, Replacements and Alterations:** Under State law, Property owners with limited exceptions, are required to: (1) install operable smoke alarms and brace water heaters and provide a Buyer with a statement of compliance. Existing operable smoke alarms, that met compliance standards when installed, do no have to be removed even if not up to current legal requirements. Smoke alarms that are added or that replace older versions must comply with current law; and (2) install carbon monoxide detection devices. Some city and county governments may impose additional requirements, including, but not limited to, installing low-flow toilets and showerheads, gas shut-off valves, tempered glass, and barriers around swimming pools and spas. You should consult with the appropriate governmental agencies, inspectors, and other professionals to determine which requirements apply to your Property, the extent to which your Property complies with such requirements, and the costs, if any, of compliance.
- E. **EPA's LEAD-BASED PAINT RENOVATION, REPAIR AND PAINTING RULE:** The new rule requires that contractors and maintenance professionals working in pre-1978 housing, child care facilities, and schools with lead-based paint be certified; that their employees be trained; and that they follow protective work practice standards. The rule applies to renovation, repair, or painting activities affecting more than six square feet of lead-based paint in a room or more than 20 square feet of lead-based paint on the exterior. Enforcement of the rule begins October 1, 2010. See the EPA website at www.epa.gov/lead for more information.
- F. **Legal, Tax and Other Implications:** Selling your Property may have legal, tax, insurance, title or other implications. You should consult an appropriate professional for advice on these matters.

4. **MARKETING CONSIDERATIONS:**
   - A. **Pre-Sale Inspections and Considerations:** You should consider doing what you can to prepare your Property for sale, such as correcting any defects or other problems, making cosmetic improvements, and staging. <u>Many people are not aware of defects in or problems with their own Property. One way to make yourself aware is to obtain professional inspections prior to sale. Pre-sale inspections may include a general property inspection; an inspection for wood destroying pest and organisms (Structural Pest Control Report) and an inspection of the septic or well systems, if any, among others.</u> By doing this, you then have an opportunity to make repairs before your Property is sold, which may enhance its marketability. Keep in mind, however, that any problems revealed by such inspection reports or repairs that have been made, whether or not disclosed in a report, should be disclosed to the buyer (see "Disclosures" in paragraph 2 above). This is true even if the buyer gets his/her own inspections covering the same area. Obtaining inspection reports may also assist you during contract negotiations with the buyer. For example, if a Structural Pest Control Report has both a primary and secondary recommendation for clearance, you may want to specify in the purchase agreement those recommendations, if any, for which you are going to pay.
   - B. **Post-Sale Protections:** It is often helpful to provide the buyer with, among other things, a home protection/warranty plan for the Property. These plans will generally cover problems, not deemed to be pre-existing, that occur after your sale is completed. In the event something does go wrong after the sale, and it is covered by the plan, the buyer may be able to resolve the concern by contacting the home protection company.
   - C. **Safety Precautions:** Advertising and marketing your Property for sale, including, but not limited to, holding open houses, placing a keysafe/lockbox, erecting FOR SALE signs, and disseminating photographs, video tapes, and virtual tours of the premises, may jeopardize your personal safety and that of your Property. You are strongly encouraged to maintain insurance, and to take any and all possible precautions and safeguards to protect yourself, other occupants, visitors, your Property, and your belongings, including cash, jewelry, drugs, firearms and other valuables located on the Property, against injury, theft, loss, vandalism, damage, and other harm.
   - D. **Expenses:** You are advised that you, not the Broker, are responsible for the fees and costs, if any, to comply with your duties and obligations to the buyer of your Property.

5. OTHER ITEMS: _____

Seller has read and understands this Advisory. By signing below, Seller acknowledges receipt of a copy of this document.

Seller _____ Date <u>4-11-17</u>
Print Name <u>STEVEN M. SPEIER, CH 7 TRUSTEE</u>

Seller _____ Date _____
Print Name _____

Real Estate Broker <u>LEONARD M SMITH, A CA CORP</u>                          CalBRE Lic.#: <u>00865064</u>
By _____ <u>BONNIE KIPPERMAN</u> CalBRE Lic.# <u>01104734</u>    Date <u>04/06/2017</u>
By _____ CalBRE Lic.# _____ Date _____
Address <u>8807 GROSSMONT BL</u>            City <u>LA MESA</u>        State <u>CA</u>    Zip <u>91942</u>
Telephone <u>(619)742-1045</u>    Fax _____    E-mail <u>BONNIEBJK@GMAIL.COM</u>

© 1991-2015, California Association of REALTORS®, Inc. Copyright claimed in Form SA, exclusive of language required by California Civil Code §1710.2. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

SA REVISED 12/15 (PAGE 2 OF 2)
**SELLER'S ADVISORY (SA PAGE 2 OF 2)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com         10889

**EXHIBIT "1"**

## ADDITIONAL LISTING TERMS
## BROKER'S AUTHORIZATION AND RIGHT TO SELL FORM
### [10899 Breckenridge Drive, San Diego, CA 92131]

1. Subject to notice requirements of the Bankruptcy Code.

2. Agent warrants that neither the Agent nor the Broker or its employees are relatives of any judge of the Court making the appointment or approving the employment nor connected with any judge of the Court making the appointment or approving the employment as to render such appointment or employment improper.

3. The United States Bankruptcy Court, Central District of California, retains full jurisdiction over all matters now pending or that may arise at any time in the future concerning any aspects of this transaction.

4. Property will be reassessed upon change of ownership. This will affect the taxes to be paid. Any supplemental tax bill issued for the period before or after the close of escrow shall be payable by the Buyer.

5. If the Seller/Trustee is unable to complete sale because of unknown defect in title or because the liens and encumbrances exceed the amount known to the Trustee or by being divested of title by the Bankruptcy court or for any other reason whatsoever the Trustee is unable to complete the sale, Agent/Broker shall have no right to damages.

6. Agent/Broker understands that notwithstanding such terms and conditions of compensation set forth in this listing agreement, the Court may allow compensation different from the compensation provided pursuant to 11 U.S.C. Section 328(a).

7. Seller is a fiduciary trustee in bankruptcy, acting in the course of administration of the bankruptcy trust estate of <u>Kevan A. Green and Dina J. Green</u>, Chapter 7 Case No. 6:16-bk-10251 SY, now pending in the United States Bankruptcy Court, Central District of California, Riverside Division, 3420 Twelfth Street, Riverside, California, before a United States Bankruptcy Judge, and is selling said property pursuant to the provisions of the Bankruptcy Code and the Bankruptcy Court orders issued thereunder; that Seller has never seen the property, is selling the property in an "as is" condition, and Seller makes no warranties or representations whatsoever pursuant to California Civil Code Section 1102-1102.13, or any other provision of California law or otherwise, except as expressly set forth pursuant to terms of the sales agreement and escrow agreement; that this sale is under the auspices and full jurisdiction of the United States Federal Court system, including, but not limited to, the United States Bankruptcy Court.

Dated: 4/11/17

_____
STEVEN M. SPEIER, TRUSTEE, IN HIS
REPRESENTATIVE CAPACITY AND IN
NO OTHER CAPACITY

Dated: 4/21/2017

_____
BONNIE KIPPERMAN, Agent

I:\TRUSTEE REPRESENTATION\SPEIER\Green 116859\EMPLOY RE AGENT BRECKENRIDGE\ADDITIONAL LISTING TERMS Angels Camp Rd.docx

EXHIBIT "1"

# EXHIBIT "2"

**BONNIE KIPPERMAN**
9549 Sunset Avenue
La Mesa, CA 91941
(619) 742-1045
(619) 461-7414

EXPERIENCE

2000 – Present

### LEONARD M. SMITH, REALTOR & ASSOCIATES        LA MESA, CA

REAL ESTATE AGENT
-Represent buyers and sellers of real property
-Experienced in the evaluation, analysis, marketing and sale of real property in San Diego County, including coordination with title and escrow companies allowing for the smooth and efficient completion of transactions
-Work with San Diego bankruptcy trustees in the sale of real property

1990 – 2000

### VANTAS, INC. / WESTERN BUSINESS CENTERS        San Diego, CA

REGIONAL MANAGER
-Responsible for total operation, leasing/management of up to 4 Business Centers concurrently
-1992 – 1999 managed and leased 106 offices in downtown, class A high-rise, (100% occupancy)
-Strong emphasis on sales, hiring /training of staff and customer service
-Created/implemented marketing/sales strategies to promote/increase rent revenues and services
-Exceeded lease up and profitability projections

1982 – 1990

### TEMPORARY HELP INDUSTRY        San Diego, CA

REGIONAL MANAGER
APPLE ONE EMPLOYMENT SERVICE (Temporary Help Division)
-Responsible for the establishment, expansion and total operation, including hiring/ training of all staff and sales in the San Diego Region for the largest California-based employment service (expanded region from 1 to 4 offices in 18 months)

BRANCH MANAGER
UNIFORCE TEMPORARY SERVICE
-Established first San Diego location of this national New York-based corporation
-Site selection, hiring, training of staff, productivity and profitability of entire operation
-Exceeded profitability projections

EXHIBIT "2"

DIRECTOR – TEMPORARY SERVICES DIVISION
**METRO ENTERPRISES**
-Hired, trained, evaluated, and terminated staff; initiated and implemented new policies/ marketing techniques (composed policies and procedures manual)
-Prepared, presented and secured bids for major San Diego Corporations
-Increased sales by 200%

1976 – 1982

KIPPY'S, INC.                                                         Coronado, CA

GENERAL MANAGER
-Responsible for total day-to-day operation of 4-store chain of retail fashion boutiques
-Coordinated fashion, sales and merchandising
-Responsible for hiring, training and performance of staff
-Expanded sales, increased profitability

**EDUCATION**
-State University of New York, Oswego, New York
-University of California at San Diego, La Jolla, California

**LICENSES**
-California Real Estate Agent
- License # 01104734-since 1991

**AFFILIATIONS**
-Women in Business – member 11 years
-National Association of Realtors – member 17 years

EXHIBIT "2"

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

*2112 Business Center Drive, Irvine, California 92612*

A true and correct copy of the foregoing document entitled (*specify*): <u>Chapter 7 Trustee's Application to Employ Real Estate Agent; Declaration of Bonnie Kipperman in Support Thereof</u>
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 04/24/2017, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- *Michael J Bujold    Michael.J.Bujold@usdoj.gov*
- *Javier H Castillo    jhcecf@gmail.com*
- *Todd S Garan    ch11ecf@aldridgepite.com, TSG@ecf.inforuptcy.com;tgaran@aldridgepite.com*
- *Megan E Lees    ecfcacb@aldridgepite.com, MEL@ecf.inforuptcy.com;mlees@aldridgepite.com*
- *Erin M McCartney    bankruptcy@zbslaw.com, emccartney@ecf.courtdrive.com*
- *Steven M Speier (TR)    lmorvant@glassratner.com, sms@trustesolutions.net*
- *Mohammad Tehrani    Mohammad.V.Tehrani@usdoj.gov*
- *Brian H Tran    bankruptcy@zievelaw.com*
- *United States Trustee (RS)    ustpregion16.rs.ecf@usdoj.gov*

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) 4/24/17 I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

<u>Judge</u>: *The Honorable Scott H. Yun, United States Bankruptcy Court, Central District of California, 3420 Twelfth Street, Suite 345 / Courtroom 302, Riverside, CA 92501-3819*

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) ___, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 4/24/17 | Uriel A. Rodriguez | /s/ |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012    **F 9013-3.1.PROOF.SERVICE**